UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE JAVIER RODRIGUEZ MENDEZ,<br>Petitioner,<br>v.<br>WARDEN OF CALIFORNIA CITY DETENTION FACILITY,<br>Respondent. | Case No. 1:26-cv-04185 (VC)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

This habeas action concerns the detention of Petitioner Jorge Javier Rodriguez Mendez, a noncitizen who has lived in the United States since being granted parole by U.S. Customs and Border Patrol on April 16, 2024. Dkt. No. 8 at 10. Based on the Government's application of 8 U.S.C. § 1225(b)(1), Petitioner was re-detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community prior to revoking his parole. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus.

## I. BACKGROUND

Petitioner is a citizen of Cuba who entered the United States through the Hidalgo, Texas Port of Entry on April 16, 2024. *Id*. Upon entry, Petitioner was briefly detained by U.S. Customs and Border Patrol, and then served a Notice to Appear charging him as removable under INA § 212(a)(7)(A)(i)(I), placing him in removal proceedings under INA § 240, and setting a hearing date of June 7, 2024. Dkt. No. 1 at 13. He was then paroled into the country. *Id*. at 6. Neither party has indicated whether Petitioner's parole was "conditional parole" pursuant to 8 U.S.C. § 1226(a)(2), or "humanitarian parole" pursuant to 8 U.S.C. § 1182.

Following his release, Petitioner applied for lawful permanent resident status, began working and paying taxes. *Id*. at 6, 18–41. Further, Petitioner has kept a clean criminal record—a fact that Respondents do not dispute. *See* Dkt. No. 8 at 13. Despite no apparent change in circumstances since Petitioner's initial parole, he was re-detained on March 4, 2026, one month before his parole was set to expire. Dkt. No. 1 at 4.

## II. DISCUSSION

Proceeding pro se, Petitioner filed this habeas petition arguing that revocation of his parole and his subsequent detention without notice or a finding that he is a flight risk or danger to the community violates due process. *See id*. at 6. Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### A. Liberty Interest

Given that Petitioner was released into the interior of the United States, he has a protected liberty interest in his continued freedom. *See Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012-DAD-SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (same). Courts throughout this circuit have found that where a noncitizen is released from immigration detention on parole, and the Government seeks to revoke that parole and re-detain the individual, process is required prior to that re-detention. *See, e.g.*, *Ramazan M. v. Andrews*, No. 1:25-CV-01356-KES-SKO (HC), 2025 WL 3145562, at *5 (E.D. Cal. Nov. 10, 2025); *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1103 (E.D. Cal. 2026); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); *Castillo v. Wofford*, No.

1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8–9 (E.D. Cal. Dec. 2, 2025). "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-CV-06695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (internal quotation omitted).

Respondents, however, contend that Petitioner is subject to mandatory detention under § 1225(b)(1), and, therefore, was not entitled to any process prior to revocation of his parole and re-detention. Dkt. No. 8 at 3. As multiple Court throughout the country have found, § 1225(b)(1) does not authorize the expedited removal and detention of noncitizens who, like Petitioner, were previously paroled into the United States and can no longer be considered "arriving" at the nation's borders. *See, e.g.*, *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 297 (E.D.N.Y. 2025) (finding that Section 1225(b)(1) does not authorizes expedited removal and the detention of noncitizens who were paroled into the United States); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 83, 94 (D.D.C. 2025) (concluding that Section 1225(b)(1) "forbids the expedited removal of noncitizens who have been, *at any point in time*, paroled into the United States" because "the only way to make sense of the statutory scheme Congress created is to see that parolees fall under neither [provision of Section 1225(b)(1)]" and that "[a]ny other result conflicts with other aspects of the statute and regulations, Congress's evident purpose, and the ordinary meaning of the statute's words"); *Bustos v. Raycraft*, No. 25-CV-13202, 2025 WL 3022294, at *6 (E.D. Mich. Oct. 29, 2025) (finding that a noncitizen who unlawfully entered the country, was paroled into the United States, and received a negative credible fear designation was not subject to expedited removal and detention despite the expiration of temporary parole); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 414 (S.D.N.Y. 2025); *Avila-Mena v. Kaiser*, No. 25-CV-6783, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1168 (S.D. Cal. 2025).

Section 1225(b)(1) provides for mandatory detention, and applies to two subgroups of

individuals who have been found inadmissible under sections 1182(a)(6)(C) or 1182(a)(7): (1) noncitizens whom "an immigration officer determines" … "is arriving in the United States[,]" or (2) noncitizens "who *ha[ve] not been admitted or paroled into the United States*, and who ha[ve] not affirmatively shown" that they have "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II). Petitioner does not fall into either category. "[A]n 'arriving alien' is one who is in the process of reaching the United States"—something that Petitioner is no longer doing as he has been living in the United States for two years. *Rodriguez-Acurio*, 811 F. Supp. 3d at 306. As to the second category, Petitioner was on parole when Respondents detained him. And even had his parole expired by the time he was detained, the text of the provision is best read to prohibit "the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." *Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d at 83.

"In sum, because [Petitioner] was 'paroled into the United States,' he cannot be subject to expedited removal under section 1225(b)(1)" and the mandatory detention scheme which flows from it. *Avila-Mena*, 2025 WL 2578215, at *5. Accordingly, he has a protectable liberty interest that must be analyzed under *Mathews.*

**B. *Mathews* Factors**

Given that Petitioner has a liberty interest in his continued freedom following his grant of parole, the Court turns next to what process was due prior to the revocation of his release. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[1] There are three factors relevant to the due process inquiry under

[1] Respondents contend that the Supreme Court has never expressly endorsed the *Mathews* framework in the immigration context. Dkt. No. 10 at 6. The Court need not address whether this representation is accurate, as the Ninth Circuit has applied this framework with respect to an as-applied constitutional challenge to immigration detention. *Rodriguez Diaz v. Garland,* 53 F.4th

the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for over two years. Respondents do not meaningfully engage with the fact that Petitioner was released, and instead maintain that individuals do not possess a "freedom from all detention itself." Dkt. No. 8 at 7. The distinction here, however, is that Petitioner was previously detained and then released by the Government. In the intervening years he has been afforded the freedom to develop ties in his community, work, and pursue various forms of immigration relief. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The record before the Court indicates that Petitioner was released from immigration custody in April 2024, and then had the released revoked in March 2026 without any independent finding of changed circumstances by a neutral arbiter before his he was re-detained. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."

---

1189, 1206–07 (9th Cir. 2022). The Court, therefore, does the same here.

*A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). This is particularly true where, as here, Respondents have made no showing that Petitioner is a flight risk or danger to the community. Indeed, the record indicates that Petitioner has no criminal history. *See* Dkt. No. 8 at 13. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so," but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to release.

## III. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner Jorge Javier Rodriguez Mendez from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter where the Government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: August 3, 2026

VINCE CHHABRIA
United States District Judge